**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| DIANA E. GLOVER-WARREN,                     )  <br>                                                                )  <br>                        Plaintiff,               )  <br>        vs.                                             )         1:07-cv-480-SEB-JMS  <br>                                                                )  <br>MICHAEL J. ASTRUE, Commissioner  )  <br>  of the Social Security Administration,  )  <br>                                                                )  <br>                        Defendant.          ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Diana E. Glover-Warren ("Glover-Warren") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I.  BACKGROUND**

Glover-Warren filed applications for DIB and SSI on March 15, 2003, alleging an onset date of disability of July 17, 1998.[1] Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on March 29, 2006. Glover-Warren was present, accompanied by her attorney. Medical and other records were introduced into evidence, and a clinical psychologist testified. Glover-Warren and two other medical experts and a vocational expert were present but did not testify. The ALJ issued a partially favorable decision on April 25, 2006, finding that Glover-Warren was disabled on June 18, 2003, but not before. On March 20, 2007, the Appeals Council denied Glover-Warren's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] A prior decision of October 23, 2002, was not reopened by the ALJ. (R. at 16).  Accordingly, the period adjudicated in this decision begins on October 24, 2002.

The ALJ's decision included the following findings: (1) Glover-Warren last met the insured status requirements of the Act through December 31, 2002, but not thereafter; (2) Glover-Warren had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) since the alleged onset date of disability, Glover-Warren had "severe" impairments consisting of a left broken ankle with residual pain and swelling and onset of a schizoaffective disorder on June 18, 2003, but Glover-Warren's depression with psychosis diagnosed prior to June 18, 2003, was a nonsevere impairment; (4) prior to June 18, 2003, Glover-Warren did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) prior to June 18, 2003, Glover-Warren retained the residual functional capacity ("RFC") to perform the full range of sedentary and unskilled work; (6) prior to June 18, 2003, Glover-Warren was unable to perform past relevant work; (7) Glover-Warren was born on December 19, 1963, and on October 24, 2002, the first day of the adjudicative period, she was 39 years old, which is defined as a younger individual age 18-44; (8) Glover-Warren had a limited education, was able to communicate in English, and transferability of job skills was not an issue in this case because Glover-Warren's past relevant work was unskilled; (9) prior to June 18, 2003, considering Glover-Warren's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Glover-Warren could have performed; (10) beginning on June 18, 2003, the severity of Glover-Warren's schizoaffective disorder met the requirements of Listing 12.03 of Appendix 1; (11) Glover-Warren was not disabled prior to June 18, 2003, but became disabled on that date and continued to be disabled through the date of the ALJ's decision; and (12) Glover-Warren was not under a disability within the meaning of the Act at any time through December 31, 2002, the date last insured. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Glover-Warren was not disabled through December 31, 2002, the date last insured for purposes of DIB, and she had been disabled for purposes of SSI beginning on June 18, 2003.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

**B.** **Analysis**

In this case, the ALJ determined that Glover-Warren was disabled beginning on June 18, 2003. This meant that Glover-Warren qualified for SSI on that date, but because her date last insured was December 31, 2002, she was not eligible for DIB. The ALJ determined that Glover-Warren had severe impairments consisting of a left broken ankle with residual pain and swelling, and onset of a schizoaffective disorder. Glover-Warren argues that the ALJ's decision that she was not disabled prior to June 18, 2003, is not supported by substantial evidence. She contends that the record demonstrates that she was disabled due to mental illnesses by at least February 2001.[2]

The period of time adjudicated in this case began on October 24, 2002. The issue in this case is whether Glover-Warren was disabled between October 24, 2002, and December 31, 2002, the date she was last insured for purposes of DIB.

The ALJ determined the date of disability, June 18, 2003, based on the testimony of Dr. Thomas, who reviewed the record. (R. at 21). The ALJ relied heavily on this testimony and noted that Dr. Thomas' testimony was based on a psychological evaluation completed by Dr. Miller on June 18, 2003. *Id.* Glover-Warren asserts that Dr. Thomas did

---

[2] Glover-Warren's contention that the ALJ's decision violated her due process rights is not supported by any examples of extreme conduct or partiality which rise to the level of fundamental unfairness and therefore will not be discussed any further. *See Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007).

3

not specify a date of disability onset and that he testified that the record was positive for severe continuing psychotic process, with "severe symptom, symptomatology throughout the record." (R. at 348). The earliest evidence cited by Dr. Thomas at the hearing was the June 2003 evaluation of Dr. Miller. (R. at 347-48). No records prior to 2003 were mentioned at the hearing.[3]

In addition to Glover-Warren's contention that Dr. Thomas did not testify as to any date of onset, she argues that the ALJ ignored controlling treatment and examination evidence showing that she was disabled before her date last insured, December 31, 2002. A treating mental health physician opined in July and August 2002 that Glover-Warren was not able to work due to major depression with psychotic features, "symptoms duration about 1 year," and that her symptoms interfered with concentration, organizing thoughts and motivation, and caused an inability to sort out real and unreal perceptions. (R. at 279-81). The ALJ glossed over these July and August reports by stating that the treating physician indicated that in July 2002 Glover-Warren was unable to work but that her prognosis was favorable with compliance and that in August 2002, she was given a good prognosis and showing signs of improvement. (R. at 20). It is not logical to accept only a portion of the reports of the treating physician relative to his opinion as to *future prognosis* while at the same time rejecting that physician's opinion that *currently* Glover-Warren's symptoms were severe enough to interfere substantially with her ability to work. (R. at 20). No medical source indicated that a good prognosis meant that Glover-Warren could not be disabled. In *Blakes v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2003), the Seventh Circuit found that the ALJ erroneously relied on conjecture when he assumed that someone with a severe disorder but a good prognosis could not be considered disabled. Here, the physician provided more than a conclusory opinion as to Glover-Warren's ability to work. He noted specific symptoms that would interfere with her ability to perform work activity. (R. at 281). During this crucial period of time relative to Glover-Warren's eligibility for benefits, the court cannot trace the ALJ's reasoning from the evidence to his conclusion.

---

[3]Glover-Warren's motion to include items omitted from the record received was granted, and through that order, a February 19, 2001, 8 page report by Dr. Smith was included in the record (dkt 17). Glover-Warren alleges that this report was originally identified as 1F pages 116-123. Neither party explains why this report was not part of the record as filed with the court, nor does either party mention the fact that it appears that 1F pages 80 through 116 are also missing from the record, as indicated by the fact that only 1F pages 1-79 are in the record, no other pages of exhibit 1F. In the February 19, 2001 report, Dr. Smith opined that Glover-Warren exhibited symptoms of depression, but no psychosis, no personality or anxiety disorder. (R. at A8). Dr. Smith assigned a Global Assessment of Functioning ("GAF") score of 60, and noted some cognitive inefficiency but the cause was unknown. It could be due to depression or an organic process. (R. at A8-9). Although this report demonstrates that Glover-Warren experienced depression in 2001, Glover-Warren has not shown how this report "proves" that her mental health impairments satisfied or equaled Listings 12.03 (psychotic disorders), 12.04 (affective disorders) and 12.05 B or C (mental retardation) at that time.

Glover-Warren next contends that at step three the ALJ erred in finding that Glover-Warren was not disabled before December 31, 2002. Glover-Warren argues that the ALJ improperly failed to cite or discuss Listing 12.05B or C in his step-three decision.

Listing 12.05 contains the following criteria:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05B,C.

The introductory paragraph of Listings 12.00 (Mental Disorders) states as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. . . . For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.[4]

---

[4] The Seventh Circuit has stated that after the regulations were revised in 2001, a "dual requirement" was introduced. *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570-71 (7th Cir. 2003) (in 2001, "the regulations introduced a new, dual requirement"); *Scott v. Barnhart*, 297 F.3d 589, 595-96 n.6 (7th Cir. 2002) ("Thus, in 1996, the regulations did not require that a claimant meet the diagnostic definition of the listing as well as one of the six sets of criteria to establish disability. Indeed, this dual requirement first appears in the Code of Federal Regulations during 2001.").

Glover-Warren argues that the ALJ ignored evidence proving her mental retardation. She refers to the February 19, 2001, report of Dr. Smith, and the June 12, 2003, report of Dr. Miller, but neither of those reports contain IQ test scores. They do indicate, however, that Glover-Warren experienced cognitive deficiencies. Glover-Warren also points to the August 11, 2003, psychological evaluation which indicates IQ verbal and performance scores of 51 and a full scale IQ score of 46. (R. at 140). The Commissioner argues that no evidence demonstrates or supports onset of the impairment before age 22, as is required for Listing 12.05. Whether such scores and the other elements of the listing were present prior to December 31, 2002, is a medical determination. Given Glover-Warren's low IQ scores and because the ALJ did not mention any portion of Listing 12.05, the court cannot review the ALJ's thinking on this issue. "[A]n ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (citing *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) and other cases). On remand, the ALJ should articulate his analysis as to whether Glover-Warren's impairments met or equaled Listing 12.05 at any time relevant to the decision.

Glover-Warren next asserts that the ALJ's credibility determination was patently wrong because it was contrary to Social Security Ruling ("SSR") 96-7p. The ALJ stated that "[a]fter considering the evidence of record, the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [sic] the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible prior to June 18, 2003, primarily because they are not supported by the medical and other evidence, as discussed." (R. at 20) (emphasis in original omitted).

Contrary to what is recited in the ALJ's decision (R. at 16), the transcript reveals that the ALJ did not take any testimony from Glover-Warren. (R. at 346-49). Accordingly, he did not have an opportunity to evaluate her demeanor nor did he hear her describe her symptoms and limitations. Glover-Warren alleged that her ability to work was limited by major depression with psychotic features, personality disorder with dependent traits, fractures of the left ankle and foot with instability, pain, and swelling, osteoporosis of the left foot and ankle, obesity, and anxiety. (R. at 20). The ALJ recited that Glover-Warren reported being able to stand for only short periods of time because of the pain and swelling in her left ankle and that walking, physical therapy and prolonged standing of 30 minutes or more aggravated her symptoms. *Id.* The ALJ acknowledged that such limitations were credible, but concluded that Glover-Warren could walk and stand for two hours during an eight hour work day. (R. at 21). In determining that Glover-Warren could perform the full range of sedentary work prior to June 18, 2003, however, the ALJ did not limit Glover-Warren's walking and standing to less than 30 minutes at a time. The ALJ also recited that anti-psychotic medications made Glover-Warren sleepy, (R. at 20), but he did not discuss the impact of such side effects on her ability to perform substantial gainful activity.

The ALJ further noted that the record showed that prior to June 13, 2003, Glover-Warren was doing housework and self-care, she kept track of her appointments, watched television, worked puzzles, played video games and knitted. (R. at 20). None of Glover-Warren's activities required sustained activity, strength or mobility, and Glover-Warren's ability to concentrate or keep pace is not demonstrated by this evidence because the length of time her activities were performed was not addressed. Reliance on a claimant's minimal daily activities does not form an adequate basis to discredit her allegations of disability. *See Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004) (ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Such activities do not support a finding that Glover-Warren could perform a full range of sedentary work.

There is a difference between an individual making up complaints and an individual whose complaints are not supported by objective evidence or have not yet been diagnosed. "Although an ALJ's credibility determination is usually entitled to deference, when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision."  *Clifford,* 227 F.3d at 872 (internal quotation omitted). Even when a claimant's complaints are not fully supported by objective medical evidence, the ALJ "must investigate all avenues presented that relate to pain, including claimant's prior work record information and observations by treating physicians, examining physicians, and third parties." *Id.* at 871-72. As noted above, treating psychiatric evidence in 2002 indicated that Glover-Warren's symptoms would significantly interfere with her ability to perform work activities. Having not taken any testimony from Glover-Warren and yet acknowledging that her impairments could reasonably produce the alleged limitations, the ALJ did not adequately articulate and base his credibility assessment on matters apart from the objective evidence of record. Here, given the "logical flaws" discussed above, *Carradine,* 360 F.3d at 756, the ALJ did not "build an accurate and logical bridge between the evidence and the result," and his adverse credibility finding is not supported by the record. *Ribaudo,* 458 F.3d at 584 (internal quotation omitted). Therefore, the court cannot affirm the ALJ's credibility analysis.

In addition to the July and August 2002 reports discussed above, Glover-Warren points to a July 12, 2002, Midtown Mental Health psychotherapy note indicating that although there was improvement overall, she had the same number of good and bad days, interrupted sleep, some crying, and that the medication had not helped with the "voices." (R. at 278). She also refers to the January 24, 2002, psychotherapy note, not mentioned by the ALJ, stating that Glover-Warren was having symptoms of psychosis such as problems understanding simple commands and processing information, ideas of references, and persecutory ideas. (R. at 272). Glover-Warren discusses additional information which predates her date last insured and which she contends demonstrates that her date of disability should be earlier than June of 2003. The court agrees that the ALJ's rationale for rejecting or ignoring portions of the treatment record is not supported by substantial evidence.

At step five of the sequential analysis, the ALJ concluded that prior to June 18, 2003, Glover-Warren had the exertional capacity to perform the full range of sedentary work, and that based on her age, education, and work experience, she was "not disabled" pursuant to Medical-Vocational Rule 201.24. (R. at 21-22). Glover-Warren argues that at this step of the process the ALJ erred because he relied on the grid, Medical-Vocational Rule 201.24, despite the existence of nonexertional impairments caused by psychotic mental illness. She asserts that the ALJ should have questioned the vocational expert who was present. The court agrees. Although the psychological expert testified that Glover-Warren's mental impairments satisfied Listing 12.03, the ALJ concluded that such eligibility began on June 18, 2003. The ALJ heard no further evidence from the other experts present: orthopedic and internal medicine and vocational, (R. at 16), and yet whether Glover-Warren was eligible for benefits between October 24, 2002, and June 18, 2003, was not addressed by the testimony of Dr. Thomas.

The Commissioner responds with the contention that assuming the ALJ properly determined Glover-Warren's exertional and nonexertional limitations, there was no requirement to seek the opinion of a vocational expert. This misses the point, however, that there was a period of time prior to June 18, 2003, eligibility for which the ALJ did not determine based on Dr. Thomas' testimony. Under these circumstances, given Glover-Warren's severe and significant nonexertional impairments and symptoms, the ALJ's failure to consult a vocational expert was erroneous.  "[W]here a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). *See also Herron v. Shalala*, 19 F.3d 329, 336-37 (7th Cir. 1994) (the use of the grid is inappropriate where the claimant's nonexertional impairments are so severe as to limit the range of work she can perform, in which case a determination of disability is made through the testimony of vocational experts who can indicate what work a claimant is capable of performing.); *Allen v. Sullivan,* 977 F.2d 385, 389 (7th Cir. 1992)("Use of the grid may indeed be inappropriate if a claimant's non-exertional impairments are so severe as to limit the range of work he or she can perform."). In light of the nonexertional nature of some of Glover-Warren's limitations, the ALJ's determination based on the grid at step 5 of the analysis and his finding that prior to June 18, 2003, she could perform the full range of sedentary jobs, are not supported by substantial evidence.

### III.  CONCLUSION

For the reasons described, the ALJ's decision that Glover-Warren was not disabled prior to June 13, 2003, is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

Date: 08/22/2008

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana